Thank you, Your Honor. May it please the Court and Counsel, Nell Brown, Assistant Federal Public Defender for the District of Oregon, on behalf of the plaintiff, Mr. Clayton Howard, in this civil rights action. This case was filed a number of years ago, and Mr. Howard filed pro se a verified complaint in this case, which alleged an ongoing and widespread practice by the Oregon Department of Corrections of stripping inmates of their basic issue, that is, their clothing, their bedding, and their other property, with the exception of certain items, including their underwear, and that that practice violates the applicable rules, and more importantly, a prior order of this Court which addressed the specific rules applicable here and ordered that strict compliance with those rules was necessary to avoid Eighth Amendment violations. Mr. Howard proceeded pro se below, and that was despite the district court's finding that this case was, in fact, exceptional and warranted appointment of counsel or, excuse me, securing of volunteer counsel. And the district court spent about two months looking for counsel and concluded that counsel was unavailable and then ordered Mr. Howard to proceed pro se. And that led to a number of other problems in this case, the first one being that his motion for class certification and his complaint which had alleged that this practice was widespread and affected many inmates, and he described those inmates' experiences in the verified complaint. Well, the class – the case couldn't go forward as a class action from the moment that counsel was not secured. With respect to his own claims, what is your response to the argument that although the rule was not followed, it was for a very short period of time and it got fixed after that very short period of time? Under the best facts for him, it's about 21 hours. Under the best facts for the State, it's about two hours. But in either event, it's not the sort of prolonged event that in the past has given rise to a claim for damages. So how do you respond to the idea that although the rule wasn't followed, the deprivation was not significant enough to warrant relief? Well, my initial response to that is that that is one of the reasons that this case should have been considered from the beginning as a potential class action. But I don't see how that helps him. My response is no. It does not help him. As far as Mr. Howard's allegations, I think it's enough to survive summary judgment and have a jury decide the credibility of the officers who put him on supervision and whether they had a justification for doing so and whether they had a justification for just stripping him of his clothing when they did so. But assume that they didn't have any justification. Right. I think that's implicit. That was my question. Assume that he's correct, but the length of time involved was very short, and there was no additional problem like being beaten or, you know, something like that. So it was this deprivation for a very short time. Why is that significant enough to warrant damages? Well, I don't think the Eighth Amendment has any minimum timeframe that's necessary in order to find a significant deprivation of his constitutional rights. But it does have to be something substantial. It does. The word is significant that the courts use, and significant isn't only based on time but on all the other factors that are at play. But time has to be important. If someone isn't fed for three hours beyond their usual dinner hour because they're being disruptive or allegedly disruptive, that's one thing. If somebody's not fed for three days, it becomes substantial. So time can make a huge difference. I agree with Your Honor that time is material, but I would say that it's not the only factor and that here you must look at the totality of the circumstances. As the courts have uniformly said in these conditions of confinement claims and that the totality of the circumstances includes being in a barren cell with no mattress, with preexisting injuries, with no clothing, potentially being cold, with no soap, no hygiene materials. You say potentially being cold. Is there any evidence that he was hypothermic? There's no evidence of hypothermia, but I don't think the Eighth Amendment requires hypothermia in order to establish an Eighth Amendment claim. There are a number of cases finding that the combination of these types of conditions can result in an Eighth Amendment claim regardless of the time, although time is a factor. There's no minimum of two hours or more required. And in this case, I think the facts should have been more developed. For example, I would have had, if I were the attorney in the case, I would have gotten a medical expert. And Mr. Howard, as a pro se prisoner, was unable to develop the facts as sufficiently as an attorney could have under the circumstances with respect to his own claim. For example, Mr. Howard didn't even put his own affidavit in the record, which I think led to a great deal of confusion as to what his allegations were. I would submit to the court that his verified complaint should have been considered as evidence of the equivalent of his affidavit. But in this case, to the extent that the case was limited to his personal claim of a constitutional deprivation, he utterly failed to develop the facts as to his own case because he considered this a class action long after the court failed to certify it as a class action, and he continued to try to put on evidence of other people's claims. And that gets back to the real reason that I think this case should be remanded for essentially a redo from the beginning of this case, which is from the moment of the verified complaint, to consider whether this should be a class action, as it was initially alleged, to consider whether counsel should be appointed based on the district court's finding that this case is indeed exceptional, and should it proceed as a class action, it would clearly be complex. So under the circumstances, I'm here to ask for the case to be remanded to start from the beginning for appointment of counsel. Part of his problem in this case is that he sued some of the wrong defendants. Some of the people that were involved never got sued. And how would that problem be fixed, if at all? Because I would think the statute of limitations has run on persons who were never named previously, because the events alleged were in, I think, 2002. The events are indeed 2002. I would have asked this court to get here. I would ask the court to remand with an order that the complaint be permitted to be amended. But to do what? What would the amendment accomplish? Well, I think if counsel were appointed, counsel would have researched which defendants indeed acted in this case. But I guess that's the source of my original question. If there are five people who were never named as defendants previously, who were found by this research to have done something bad in the summer of 2002, how is that of any legal assistance to your client five years later? I think the statute of limitations is shorter than that. Well, if this case were to go forward on the claim that there's an ongoing policy or practice of stripping inmates of their basic issue and violating the rules and violating this court's order in La Mer, then the court would be in a position to issue injunctive relief. Actually, I don't understand. You started off by saying this, and I don't quite understand how a violation of the rule of the sort that happened here runs afoul of our decision in La Mer. The ninth circuit's rule. What we said in La Mer is that the rule is constitutional. We didn't say that only the rule is constitutional and that nothing that doesn't conform precisely to the rule is unconstitutional. I think the court in La Mer, La Mer was a 1993 decision. It was based on Judge Panner's earlier decision, and it accepted as true a number of the facts that Judge Panner had found after he conducted hearings at the Oregon State Penitentiary. Right. And that case, although it didn't have an extensive legal discussion relating to strip status, adopted Judge Panner's decision insofar as it found that the Eighth Amendment would be contravened should inmates be stripped of their property without having a prior finding that they had misused that property. So the court in La Mer, I believe, only limited the injunctive relief that the district court had ordered. And what the Ninth Circuit said in that case is that the district court had provided too broad an injunction because the district court had said that psychiatric evaluation was required if the deprivation was going to continue beyond the two-hour period. And the Ninth Circuit said that's not necessary. The rules are constitutional, and if you adhere to the rules, you won't run afoul of the Eighth Amendment. And I think that's true. I agree. We said that. We didn't say the converse. I think it's implicit that if the — if the — based on the way the La Mer decision is written, it is that the district court found it would violate the Eighth Amendment to go beyond the rules. And this Court affirmed that or adopted those — the lower court's findings, but simply said that as long as the State follows its own rules, we don't have a problem. Because if you look at the decision — What page are you relying on? I agree with you that as long as they follow the rules, we don't have a problem. What I'm saying and all that I'm saying is the fact that they didn't follow the rule in the respect in which they didn't follow the rule in this case does not automatically mean that there was an Eighth Amendment violation. No. But in that La Mer decision of the Ninth Circuit, they said that they were going to limit the injunction to simply following the rules and that no — and that was in part because no prior court orders had been violated. The Court had found that the appellant didn't follow — didn't fail to follow those court orders in the past. And here, what Mr. Howard has alleged in his verified complaint is that this Court — sorry, that the Oregon Department of Corrections has failed to follow orders. They failed to follow the Ninth Circuit's decision in La Mer which said comply with these rules. And his action is styled as a contempt action for violation of these rules which the Court has ordered compliance with. And in that way, I think that it evidences, in fact, a deliberate indifference to both this Court's prior order and to the clearly established rights that inmates have to those rules being applied to them as they are written. Well, that would support a finding that perhaps that the injunction was not followed. But that does not mean that there's an Eighth Amendment violation as well necessarily. Perhaps not necessarily. But I do think the Eighth Amendment violation requires a deprivation of a serious need, a basic necessity, as well as deliberate indifference. Right. So there could be, again, using time as one of the factors here. The prison could have said, we hate the La Mer injunction, and we are not going to follow this rule for 20 minutes. We're being deliberate. We hate that injunction. So for 20 minutes, we're going to take away something we're not supposed to. But then we're going to give it back. And, you know, is that an Eighth Amendment violation, too? I think it's clearly a violation of the injunction and the rule. But, again, I'm not sure where that gets your client. Well, again, that's why I think this case needs to go back to the beginning. My concern here is that there is an ongoing policy that not only violates this Court's prior orders, but would potentially violate the Eighth Amendment. And if you look at the verified complaint, which is starting on the first page of the circuit record, it lists numerous inmates, far more than Mr. Howard himself, who suffered serious deprivations of their constitutional rights because they were placed naked in their cells for longer periods. They're not in front of us now. I'm sorry. Let me just clarify what you're saying. You keep saying you want to go back to the beginning. But that gets you nowhere without an appointment of counsel, right? That's correct. But the district court, I would suggest, did not get that issue wrong because the court kind of bent over backwards to try to find counsel, and nobody stepped up to the plate. That's true. The Court did. I think the Court made the right ruling finding this case exceptional and finding that counsel was warranted. The Court looked for counsel from August 5th to October 23rd and decided at that point that counsel was unavailable, they couldn't find a volunteer, and therefore ordered him to proceed pro se. I do think the Court made a good effort, but I think the Court, under the circumstances where the Court had made the finding that counsel was warranted, undertook a duty to secure counsel. And I have to say, you can't just, you can't conscript counsel. I mean, there's no money to pay counsel, that is, to appoint counsel. So somebody's got to step up to the plate. Right. And the Ninth Circuit has said in the past that has, in this case, United States versus 30.64 acres of land, which was a 1986 decision, explains that the Court has a you shouldn't give up because volunteers from the community should come forward. And I read that in the judgment. But when they don't, when they don't, what is the district court supposed to do? Because if the case languishes, then eventually the defendant is going to come in and say, let's dismiss for failure to prosecute, if you can't. I would submit that it didn't languish very long before the Court made a decision that counsel was not going to be found. Under the circumstances, I think the Court could have searched longer to find counsel. And the Fifth Circuit has said in the Branch versus Cole case, which I cited, that it was an abuse of discretion for a court to refuse to find counsel because of unavailability alone. And here, that's exactly what happened. Counsel was unavailable because no one would volunteer. And the Court only looked for about two and a half months. And during that time, there was also some confusion. Mr. Howard suggested to the Court that he had found counsel and that they would make an appearance. The Court directed that counsel to make an appearance, and the counsel never did, presumably because the counsel opted not to volunteer for the case. But it's not clear from the record whether the Court was indeed searching for counsel that entire time. And under the circumstances, I would submit the Court should have spent more time to secure volunteer counsel, for example, as I was appointed in this Ninth Circuit appeal. I do believe counsel could have been secured had the Court spent more time and directed the clerk to continue searching for perhaps only another month, another week. It might not have been long, and we just don't know. But had counsel been secured, this case would be a very different case. It would have been possible to certify it as a class action. Because counsel wasn't appointed, that issue was never even considered on the merits. And it's not before this Court now, but if this case were to be considered. Well, in a sense, it was considered on the merits. The Court found that he could not be an adequate class representative within the meaning of the rule. Because of the lack of counsel, that is a finding under the rule. Right. And that was a correct finding. And I don't dispute that here. But had counsel been appointed, the question of whether a class should be certified under the appropriate rule of federal procedure would have been considered. And the allegations in the verified complaint could have been developed to demonstrate that this was a much more widespread practice and policy. And we have a case here where the defendants have admitted to having an informal policy of violating the rules. And they admit that they did that routinely with people who were put on close supervision. And it follows from that that there are people who, inmates, who had more significant deprivations, likely, than Mr. Howard, and some who had less significant deprivations than Mr. Howard. But those facts weren't developed because this case was neither appointed counsel in this case or was the record developed as to whether or not these other inmates had substantial claims. Under the circumstances, that is why I'm asking for remand. I can tell the Court is concerned that Mr. Howard's individual suffering was not enough to constitute an Eighth Amendment violation. Under the circumstances, I think there were analytical errors that were made at the summary where credibility decisions needed to be made. I think the Court judged the credibility of some of the witnesses and viewed some of the material facts. Well, actually, what the Court did, and what I regard as being somewhat unusual proceeding, but the Court said, look, I think all the witnesses were credible. So she didn't really make any determinations. She basically said, that's off the table. I'm going to view the facts in the light most favorable to the plaintiff. I would submit that there were some facts that were not viewed in the light most favorable to Mr. Howard. For example, whether or not he was deprived of toilet paper. At the summary judgment stage, there was credible evidence from him that at that particular occasion on August 2nd and 3rd, he was deprived of toilet paper. There was countervailing testimony from the officials that it was their practice not to deprive people of toilet paper, but that they didn't recall what specifically had happened that day. Under those circumstances, the benefit of the doubt would have gone to Mr. Howard. And I think that that is implicit in the original question that Judge Graber asked that we followed up on, that he was, and it was for a couple hours. Does that matter? And I think it does when you consider the totality of the circumstances and you don't look at each of the facts in isolation. Okay. Thank you. Your time has expired. Thank you, Ms. Brown. Mr. Thompson. Thank you, Your Honor. At police court, police counsel, I'm David Thompson, appearing on behalf of the defendants in this case. Mr. Thompson, may I ask you just sort of a question right off the bat with respect to the Lemaire conundrum? How do you see that playing out? That is, obviously, there was here an admitted violation of the regulation. So what's the consequence, and how should we approach it? Well, the way that the issue is presented in this case is in the context of the plaintiff's Eighth Amendment claim. And I don't read Lemaire as standing for the proposition that if you, prison official, violate this injunction with respect to strip status, you have committed an Eighth Amendment violation. The case simply cannot be read that way by judges or lawyers, and I would drop down. And it certainly could not be read that way by reasonable prison officials unless they read a lot into that opinion. And, in fact, there is expressed language in that opinion that gives rise to the notion that a violation of the injunction with respect to the strip status situation does not give rise automatically to an Eighth Amendment violation. Let me just tell you what's troubling me in this case, and maybe you can satisfy my concerns and maybe not, but we do have a situation in which, at least to some extent, there is a conceded violation of the rule and probably a violation of the injunction as well, to the extent that it said you're supposed to follow your own rules. If plaintiff's evidence, if his story is believed, he was cold, he slept on a concrete floor, he says, and he became cold, he was deprived of toilet paper for nearly 24 hours, this is his side of the story, in addition to the admitted violation, why doesn't that at least create an issue of fact about whether the deprivation was significant enough to rise to the level of an Eighth Amendment violation? A 24-hour period being cold and nearly naked and having no toilet paper, it doesn't sound like a good thing. Well, and I had the same reaction, quite frankly, to the case when I picked it up from my colleague who left the office, and I — Then maybe the answer is it should be remanded for a trial. It is a — I have to concede, Your Honor, that this is a fairly close case. Here's where the district court came down on that particular issue, because I think the district court did, in fact, view the case with all of those possibilities because the district court limited itself to one undisputed fact, that the plaintiff had been put in a cell and issued underwear only, and there was some question about whether or not he got shower shoes and toilet paper. But we have to assume that he didn't. Let's assume that he did. He's right. So underwear only doesn't get anything else. He's there for a two-hour period until status changed. He says it was 21 hours. Well, and that's where I think there's a problem with respect to that view of the case, because I think it is undisputed, and I think the district court was right about this. And I don't believe that the plaintiff made an issue about this particular fact, that at 8 o'clock p.m., he went into the cell. At 10 is where there was the discovery of the underwear hanging from the ceiling, and at that point in time, you had a change of status. And it no longer was what is called a close supervision  status, and it was medical personnel that were watching him at that point in time for purposes of possible suicide. And it was that you know, that kind of dances around the problem, in my view. And I guess this is what bothers me. Regardless of the name of the status, he's not quarreling about the name of it. He's quarreling about the conditions in which he was placed, regardless of the label. And if you take away the label, it seemed to me that you had his putting forth facts that it was a period of 21 hours or thereabouts. I'm not sure about my numbers, but it was nearly a full day with the cold floor, the no clothes, the no toilet paper, and so forth. And two hours is not really that big a deal. Twenty minutes is not that big a deal. But when you start getting into longer periods of time, I don't understand why that's not a factual issue. Oh, it's the troublesome part of the case for me. I would agree. And it seems to me, however, that where the district court came down was looking at all of that. Do you have an extreme deprivation within the meaning of Eighth Amendment jurisprudence? And even if you assume that the plaintiff suffered all that you have described, do you have an extreme deprivation that rises to the level of an Eighth Amendment violation? I'll concede it may be a close question, but the way the district court viewed the case was it was a matter of, yes, some discomfort was suffered by the plaintiff, but does it amount to an extreme deprivation where you had any sort of significant injury to the plaintiff? And it seems to me that that is an appropriate approach in some ways. Are you asserting that there has to be physical injury, like he has to have had hypothermia, or is it enough for him to say, I really was cold sleeping on the concrete floor and I didn't have any toilet paper, and it was humiliating and disgusting? Does he have to have a broken arm? Well, I think this Court certainly has talked about the necessity to show something more than the minimus injury. And that's where the district court, I believe, landed with respect to evaluating what was alleged here. Now, the only thing that with respect to the plaintiff's injury that I can find, and I will admit that I perhaps am not as familiar with this rather voluminous record as my colleague was, but all that I can find is the allegation in Plaintiff's verified complaint with respect to what he actually suffered as a result of that first incident, August 2nd and August 3rd. And it's not very detailed with respect to the injury. Yes, he said he was cold. And what page of the complaint are you looking at? Excerpt of record 19. That's the first incident. I was cold in physical pain for sleeping on concrete for two days and psychologically traumatized, suffered anxiety and depression. Now, the question is, is the description cold and physical pain for sleeping on concrete for two days. If you slept naked on concrete for two days, I mean, just, you know, common sense, you might not feel so good. I agree with that. I agree with that. And I will concede that this is perhaps a close case with respect to summary judgment. Let me ask you something. Yeah. Because there's a lot of other stuff that gets in there, including his refusal to leave three times during that period. That's right. But never mind that. We've got to put that aside for purposes of summary judgment. Here's my question. Your conversation with Judge Graber, who I've been listening to, I think has proceeded on the assumption that you add the two periods together. And I want to be sure of what we're talking about. So is your view different, your own view different, depending upon whether the two periods are aggregated or whether they are looked at individually? Yes, it is. And I proceeded with the discussion with Judge Graber based upon the plaintiff's view that you have to lump them together. Now, is that an appropriate view in light of what was presented to the district court? Because I think the way the district court analyzed this evidence and in coming to some view of what the undisputed facts were for purposes of the summary judgment ruling, the district court clearly did split and split that initial period where the status was close supervision status where there was a concession by the defendants that they made an error. That started at 8 p.m. and at 10 p.m. And I don't think there's any dispute about this. There was a change of status. A nurse came in and did an evaluation, and there was a change of status, and it became close observation status conducted by medical personnel. Now the question is, do you have an extreme deprivation in that second half, which you have issued to the plaintiff a smock, not just underwear, and, yes, there is a deprivation of bedding, et cetera, et cetera, from the cell, but at that point in time, the concern is suicide? Now, is that an extreme deprivation for purposes of the Eighth Amendment? And I think that's what the district court was looking at. And my understanding is that with respect to the second period, there's no defendant named who had any responsibility for it. Well, and that's correct. That's another quote. So what do we do with that? What's the consequence of that? The consequence, I believe, of the way that the plaintiff has named the defendants in this case is that you have to look at the named defendants. And if, in fact, the defendants that are named don't have any knowledge or responsibility for the alleged violation of the Constitution, then summary judgment is appropriate with respect to these particular named defendants. And that's another way of looking at this case. And quite frankly, that's where the district court also went with respect specifically to Lieutenant Peterson and Lieutenant Turner. Which all goes back, actually, to opposing counsel's argument that the biggest problem was that he didn't have a lawyer who could help him sort out who were the proper defendants to name and how to put together an affidavit that explains why he's aggravating these time periods, if that's his position. How hard does the district court have to work, and did the district court do that here? Well, having had some experience with that, I got a letter once from the district court in this district to act as volunteer counsel. I felt sufficiently pressured by that letter from the judge to look at the case, and I, in fact, volunteered. But I knew that I did not have an obligation. And there was a time period involved in which I could assess the case. That appears to have occurred here, where counsel was given an opportunity. What did the district court do here, specifically? The district court directed the clerk of the court to solicit volunteer counsel. And that, I believe, is the obligation that the district court has if it believes it's an exceptional case. I certainly am not going to disagree with the proposition that it would have been far better to have counsel involved here. That's clear. The question is whether or not the district court had an obligation to go beyond what it did. And what I don't see in the plaintiff's briefing in this case is a suggestion that the district court did nothing. That simply is not true. The district court clearly did make an effort to get volunteer counsel, and the effort was unsuccessful. Well, my impression from the papers is that there is a volunteer counsel panel of some sort. That's correct. That can be, and that the district court touched base, touched that base? Apparently, yes. And apparently, the record reflects that at least two attorneys had responded initially as possible volunteer counsel. And for whatever reason, we don't know. The record apparently does not reveal to us why volunteer counsel did not make an appearance. Nor presumably would that be an appropriate inquiry. I mean, this is a case clearly. Having been involved in these cases on the plaintiff's side where I was representing a prisoner, I know it is much better to have counsel involved. But I don't think that's the issue. And it — and quite frankly, plaintiff's counsel today's comment that this thing needs to go back for a restart is revealing in the sense that this record, I believe, is inadequate, although perhaps a close call, is inadequate to make out an Eighth Amendment violation. I have another question that's probably — seems to be a little off the wall, but I at least was very surprised by the way this went down. I've never heard of having an evidentiary hearing in connection with a summary judgment. Now, I may be old, which is definitely true, and so things may have changed. Or the practice here may be different, or it may be different in connection with some prisoner litigation. I don't know. But that struck me as being quite odd. It was very odd. Okay. It struck me the same way. I have never been involved in a summary judgment proceeding where there was an evidentiary hearing. Okay. Well, we — and so that being the case, even though the district court said most of the things one would want to hear, that is, I'm going to interpret any conflicts in the plaintiff's favor. And even though, in a certain sense, the evidentiary hearing really benefited the plaintiff, because he did kind of a very good job, I thought, of conducting an examination, a cross-examination, and putting on his own witnesses, it helped him sort of get evidence into the mix. Still, the judge did say, I kind of believe all the witnesses, and that's bound to have infected her analysis and her conclusions. So what do you make of that? Well, it's troubling. I think sprinkled throughout this record, in all honesty and in the district court's written order, are some things that suggest that the court, at least in certain circumstances, was finding facts. That's troubling. It's not. Why isn't it beyond troubling and procedurally erroneous on summary judgment to be even saying things like, I find the witnesses credible? I agree. It's a problem for me procedurally to look at a record like this and say that, hey, this is typical. Well, what should we do about it? How can we bless what happened? Well, here's how I think you can bless with what happened. Can you distill out of this record and out of the district court's order a set of undisputed facts upon which the ultimate conclusion of law in this summary judgment proceeding can rest? I think that's the question. I suppose since we have the Novo review, the answer is, yeah, sure, I guess we can look at the record and just play district judge, which I love, and just do it. But, you know, that's not the way the system works. And I would like to piggyback on to Judge Graber's question, another one, which is, if, if, for this or for other reasons, we should decide to remand, should this go to a different judge because it was evident you're hearing or not? Well, having never seen a record that looked like this on summary judgment, I, I, I sense the concern that you have in sending it back to a judge that may well have been and somewhat moved in one direction or another, having heard live witnesses and effectively having to determine credibility, perhaps it would be better to go back to a different judge for consideration of affidavits only and a verified complaint, which, quite frankly, can be considered an affidavit in a summary judgment proceeding. And it's supposed to be. And it's supposed to be. And, quite frankly, there was plenty in the verified complaint, in my view, to have allowed this district court judge to have made a decision with respect to summary judgment. My own view is the judge could have come to the same conclusion based upon the affidavit submitted by the defendants and the verified complaint. It's unfortunate that we have inserted into the process an evidentiary hearing, which I think was, quite frankly, the district court judge, in all fairness, bending over backwards for the plaintiff and trying to give the plaintiff an opportunity to do just what the judge thought wasn't happening. That's probably true, but it sort of muddies the waters analytically. It does. I agree. The, the solution is not absolutely clear here, but the only, the only thing I can offer, and I see that my time is running out, is that if this Court can distill from this record and from the order of the district court a set of undisputed facts upon which the ultimate legal conclusion can rest, then the Court could affirm. And that's about all I can offer. Well, thank you, counsel. Thank you. Both of you. I appreciate your argument. And the matter just argued will be submitted. And to give me just a personal word, you know, it's a pleasure to sit here in Portland in this wonderful courtroom. But as a judge who spent a lifetime on the bench basically in Los Angeles, a big city. And this is a, this has been a rare, this has been a rare argument because I think counsel on both sides were very professional and very forthcoming in, in, in, in helping us try to deal with a difficult issue. And I personally appreciate it. I'm sure my colleagues do. Definitely. I just wanted to say. You both did a great job. I just wanted to say that. So, thank you. That said, the matter just argued will be submitted and the Court will stand in
judges: Rymer, Graber, Bea